Thank you for having me, Your Honor. May it please the Court, good morning. There is one thing at issue in this appeal. Whether a person should have discovered injury, as the District Court noted, is a quintessential jury question, and that is never more true when there is compelling evidence both ways, another thing the District Court said. This case should present no exception to that general rule, especially because, as it did here, the pernicious of the abuse, so victims cannot recognize that the abuse caused subsequent injury. Plaintiff did not connect his abuse with any injury because of the dissociation and avoidance arising from the child abuse. These defense mechanisms continued even when confronted with another victim's abuse and damages, as confirmed in Plaintiff's case by Dr. Green's report. These symptoms themselves prevented, that is, affirmatively prevented, Plaintiff's recognition of his injury, and without a known connection between the immediate cause and his injury, there is no duty to inquire, even under federal law. Plaintiff had no perception of any connection. Oregon's Child Abuse Statute of Limitations recognizes this effect and is directly incorporated into the future claims class. The bankruptcy court said that 12-117 governed all tortious conduct at issue. 12-117 is unequivocal in that the child abuse and the injury are two conceptually and logically distinct concepts. This is in contrast to federal law, where awareness of injury and its immediate cause is sufficient to trigger statute of limitations. It's also distinct from Oregon's normal accrual rule, which requires knowledge of three things, awareness of the invasion of legally protected interest, knowledge of the identity of the tortfeasor, and knowledge of causation. Instead, ORS 12-117, the basis of the timeliness here, logically separates the abuse and its immediate consequences from the injury that triggers the statute of limitations. In this way, Oregon law recognizes the victims of child abuse unconsciously and involuntarily use mechanisms such as disassociation and avoidance, often for decades, to continue their functioning. Child abuse forces the victim to believe that the abuse caused no harm, and Oregon's statute of limitations specifically excludes that touching from triggering accrual. So whether accrual occurred in its reasonableness cannot be viewed apart from this context. Both accrual and a duty to inquire are governed by the standard of a reasonable person in plaintiff's situation. Counsel, I have a question for you. Why wouldn't your client at least be on some type of inquiry notice, where he'd have to inquire about whether he had harm before that bar date? The requirement for inquiry notice is triggered by knowledge of injury and knowledge of its connection to the harmful conduct. Without the knowledge of that connection, and that's in TR, it's also in EBO, and it's in another case that we did not cite called O'Connor v. Boeing, which I'll discuss later, and that's a Ninth Circuit case dealing with contamination from the Rocketdyne facilities in California. But the bankruptcy court recognized, even more importantly, the bankruptcy court recognized that not all victims are injured, and not all injured parties recognize the abuse. That was contained in the FCR order itself, and in fact it comes from defendant's own expert, who testified that many individuals are not in fact injured, and that was in the FCR order, star page 3 at note 10, from Dr. Conte. The definition of reasonable, including a reasonable person in the particular victim situation, is susceptible to more than one inference in this case. The Archdiocese attempts to turn this quintessential injury question into a purely legal matter, something the plaintiff can't do in jurisdictional situations. Yet it's only through the complexities of bankruptcy law that the statute of limitations serves as a basis for jurisdiction here. These are state law claims, and the bankruptcy court already established that they are governed by Oregon's unique accrual and discovery rules in child abuse cases. Under those rules, plaintiff's constructive discovery of injury cannot be determined here as a matter of law. For discovery of a claim to be inferred as a matter of law, this circuit, at least in the fraud context, has required irrefutable proof that discovery should have happened. That's at Bebo at 1110 note 3. There is no irrefutable proof here. In fact, it's quite the opposite. Plaintiff produced evidence, including an expert report, showing that the very abuse he suffered prevented the discovery of his claim. As the district court noted, there was compelling evidence both ways. In particular, plaintiff here produced evidence with the expert testimony that the discovery prevented him from understanding that he was, in fact, injured by the abuse, which are two different concepts, prior to the actual date of discovery. The archdiocese produced evidence of plaintiff's awareness of the priest abuse litigation, his awareness of the claims bar date, and plaintiff's own understanding that he might, may, have a claim similar to his brother's. But may is not must. Yet the archdiocese produced no evidence that this discovery is contrary to normal reactions of child sexual abuse survivors. In any event, that reasonableness is and remains a jury question. Truly, when there is compelling evidence both ways, none of the archdiocese evidence can render plaintiff's behavior unreasonable as a matter of law. Plaintiff has proven everything necessary to meet his burden of persuasion regarding the reasonableness of his discovery and to do so at trial. Plaintiff is not asking this court to come to a different opinion of the facts, as in de novo review. This is clear error review. But instead hold that the district court was not entitled to weigh the facts here at all. That's clear error. Well, is the cutoff in the plan what's really hurting you? I'm sorry, Judge Schroeder. Bar claims date. The bar claims date that was set. The claims bar date is the future claimant's class is exempted from the claims bar date. So if we're talking about, if we're talking, this is like a latent injury of asbestos or contamination case, which is what I'm going to discuss later. And in fact, this court just ruled on one of those cases 10 days ago on the 27th in the case called Avila. But the claims bar date does not trigger or does not operate if you have a plaintiff who did not realize his injury. Your position is if a claimant doesn't know they've been damaged, then they're not aware of all the elements of a claim, then the bar date doesn't apply to them. Not just my allegation, Your Honor, or my assertion. That's the bankruptcy court's assertion in the FCR order, the Future Claims Representative Order. And that's exactly why that order adopted ORS 12117. It's because of this distinction between abuse and injury. That premise sounds correct to me. Just as one judge, if a person doesn't know of their damage or of a substantial possibility of damage. But the question is, in the total circumstances here, is he on notice so that he's aware of his damage? Well, under the Ninth Circuit precedent and Oregon precedent through TR, so Bebo and TR, that inquiry notice is not triggered unless there is an awareness of a connection between the immediate cause of an injury and the injury itself. And that's the immediate cause part is federal law. Did he ever, I'm a little hazy on the facts, but did he have a family member who made a claim relating to the same? He did, Your Honor. The same priest? Yes. Does that put him on notice? It puts him on no more notice than anyone else who, quote, may have a claim. One man is not his brother. He may have thought, and I can't say that this is testimony or in the record, I'm simply saying as a matter of logic, he could have thought his brother's internal emotional constitution was far different than his. I don't know, I don't believe that's in the record at all, but what I'm saying is from a standpoint of anyone being injured, I could be exposed to hexavalent chromium and you could be exposed to hexavalent chromium, but only one of us could get cancer. So in his mind, when exacerbated by the effect of child abuse, which is it did nothing to me because I can't face looking at it, I'm not going to look at it. And because he thought that way, he simply did not recognize a connection between what had happened to him as a child and any injury that subsequently resulted in later life. The injury here, again, is not the abuse. It is not at all in a matter of temporally or logically. Those are two separate concepts. His brother actually came to him and said, since I have this claim, I've recovered all this money, why don't you do the same thing? And he answered, because I didn't feel harmed. I didn't feel harmed. I'm not going to bring a fraudulent claim in bankruptcy court. That was his logic. And he did not feel injured and we have obviously proof now. And maybe, Your Honor, perhaps that's not good enough, but even if it's not, that is a question for the jury, not for the court. If it's unreasonable for him to say, oh, I'm not injured after his brother comes to him and says, well, I The jury can make that determination, but we have factual support in the form of an expert opinion that says, this is why it happened. And we don't need to prove an ultimate fact such as whether that was reasonable. FRE 704 says an expert can testify as to an ultimate fact, but he certainly does not have to and that is not a burden of proof to bear at trial. So if these facts wouldn't satisfy the claimant's bar date, it's hard to imagine what facts would. Well, I can answer that, Your Honor, and I would like to reserve three and a half minutes since I see I'm at four. That is the other archdiocese opinion in this case where the claimant was ruled to have known as a matter of law that he had discovered his injury. And the reason was because an attorney told him he had a claim. He had one, not he may have one, it looks like he could have one, maybe, let's see. He had a claim. And the who's done this for, did this for a lot of years. I mean, there was no question at that point that he had recognized or should have recognized his injury. In addition, there was no, there was no expert testimony introduced there to say that this particular plaintiff was under some sort of disability from recognizing it, which is exactly what we have here. Okay. You want to reserve rebuttal time and we'll give you an extra minute in your rebuttal  Thank you, Your Honor. May it please the court. My name is Thomas Stolzich. I'm here on behalf of the reorganized debtor under the Chapter 11 plan, which is the Roman Catholic Archbishop of Portland and Oregon. The district court did not commit clear error when it granted defendant's motion. There are two decisions the district court made, both which encompass the should have known standard. First, the district court decided that plaintiff did not meet the definition of a future claimant under the bar date order and the plan of reorganization confirmed by Judge Paris. Therefore, because under these undisputed facts, the plaintiff should have been known of a substantial possibility, the plaintiff did not meet the jurisdictional requirement to get into court. Second, the district court also determined that on the undisputed facts before the court on the should have known standard, the plaintiff also, even if he did qualify as a future claimant, his claim was barred by the statute of limitations. So there are two questions on both of which the plaintiff must demonstrate clear error in order to reverse. Why is it that we review for clear error rather than to know? This district has, at least from 1987, determined that when a district court is determining a should have known standard, it is a mixed question of law and fact, and therefore, it is clear error. I found at least seven cases. The most recent one I found was in 2008, the case, and they go back to 1987. The Erlin case, I think, is the one that the claimant cited in his brief indicating that it was a clear error standard, and I believe Judge Beisland was on that panel. That's the rationale, and it doesn't, at least since 1987, this circuit has not departed from that. So both of the district court's decisions are reviewed under the clear error standard, and with the court's permission, I'd like to review the notice facts that were in the record. The district court only talked about three in its opinion. The fact that, as was noted, in the plaintiff's own nuclear family, his brother had made a claim in around 2000 or 2001, and according to the plaintiff's testimony, his brother won and received money. Second, the court focused upon the undisputed facts that this plaintiff was aware of other people suing the Archdiocese of Portland for harm created by Maurice Grimond, the same person that harmed him, and that those people had won their lawsuits. And then finally, the district court focused on, by the time that the claimant actually received the bar date notice, it was mailed to him because he'd been a graduate of one of the Catholic schools in the Portland Archdiocese. He understood at that time, this is his own deposition testimony, he knew he might have a claim. Those are the three things the district court relied upon for the substantial possibility under the should-have-known standard. But there were others in the record. What does the notice say? The notice says, and it is at, the whole notice is at Supplemental Excerpt of Record 143 for 155. And it, in bold, right across the top said, this is an important notice, your rights may be affected. And then it goes through the three types of persons, and it says that if you were touched under the age of 18 or had sexual contact by a Catholic priest, employee, volunteer, or other person, you may have a claim. And it talks about the deadline for filing claims, that the claim will be forever barred if you don't file a claim. It also tells where this plaintiff had been. And then over on the, I think pages 7, 8, and 9 of the notice, it lists the various things the claimant can do. There was a tort claims committee that represented the injured claimants in the Archdiocese of Portland, Chapter 11. They had a number to call. BMC, the claims administrator in the bankruptcy, had a number to call. That's all in the notice? It's all in the notice. And his brother's situation, what, his claim, when was it filed in relation to that? Five years before. It might have been six years before. The record is a little bit imprecise, but it was either 1999, 2000, or 2001. So anywhere between four to six years before the claims bar date that the claimant's brother had filed a state court suit and won the claim according to the plaintiff's testimony. And in fact, as Judge Beislein noted, the record also indicates that at that time, back in 2000, the brother asked this plaintiff, aren't you going to file a claim also? And Dr. Green's report actually provides more information that's helpful to the district court on that issue, because Dr. Green's report at... Pardon me while I find it. I want to be sure I'm accurate. Right. ER 102, it's page eight of Dr. Green's report. At the very bottom of the page, in discussing the plaintiff's own statements to Dr. Green about this various history, the fact that there were articles that the plaintiff had read in the year 2000 about a number of people who had made claims because of Vermont, and that his own brother had made a claim. I'm quoting from the very last line on page ER 102. I'm quoting from Dr. Green. He added that he, that's this plaintiff John Doe, knew the reasons for the lawsuits having been filed and that he chose not to participate at that time, end quote. And claimant's brief talks about the bar date order that was established by Judge Paris in the bankruptcy, and Judge Green actually said that the bar date order was not intended to revive or allow late claims where someone decided not to participate because of shame or embarrassment or, and I'm quoting Judge Paris, a desire not to come forward. So Dr. Green confirms in his report that the district court did not commit clear error. This is right smack in the middle of Judge Green's case. It becomes difficult to overcome. In addition to the points that the district court relied on, this record also contains other notice facts. In the early 1960s, this claimant was aware that his contemporaries from school had been told not to go around Vermont because Vermont was a molester. In the 1980s, there was another priest, a very prominent of child abuse in the early 1980s. The plaintiff was aware, he told us in his deposition, that that priest, Laughlin, had, people had sued him and obtained money. So there were a number of notice facts in addition to those that were relied upon by the district court, which shows that the district court did not commit clear error under the should have known standard. One other point I might make is that we also know what Judge Paris believed about her own order. There's a case that both parties call Archdiocese II, and Mr. Roggendorf mentioned it in his remarks, where during the bankruptcy, Judge Paris, the bankruptcy court, was faced with a similar situation where a claimant had come forward with prior knowledge that would excite substantial possibility that he might have a claim. In that case, it was a lawyer investigating another person's claim, telling that claimant, you may have a claim. In this circumstance, we believe under these undisputed facts, it's no different, especially with the get to the bar date notice, which in essence does tell someone with this plaintiff's facts that he has a claim. We ask, unless the court has any questions, the Archdiocese of Portland would submit on this brief. Okay. Thank you, Mr. Delcich. I don't see any questions now. So, Mr. Roggendorf, Stacey, please add a minute on to his time. I'm giving you an extra minute. Somewhere in your rebuttal, please explain, you know, what occurred that led your client to want to assert a claim after the bar date that he didn't want to assert before? Well, Your Honor, to begin, thank you for the extra minute. To begin with, I would say that it's not that our client did not want to assert a claim. It wasn't a choice in the case of the plaintiff. He did not feel that he had been injured. Now, as for how the discovery works, well, that's a psychological phenomenon, and the psychological phenomenon was, as plaintiffs described it, an epiphany, and as in a revealing of the mind to itself. And, curiously, in the FCR order, between pages star 3 and star 4, the bankruptcy court noted that the future claims class was established for those who know they have, quote, been subject to abuse, but not yet manifested an injury. And the bankruptcy court went on to define manifested as being revealed to the mind. In other words, child abuse, you're sitting there one day, and you may have remembered your abuse the whole time, and this is a phenomenon in the decade I've been doing this that I've seen countless times. All of a sudden, for whatever reason, and in fact, or for no reason, the mind suddenly realizes it, and there's no good, rational, in the sense of, I find these words a little confusing. Well, Your Honor, just, Judge Schroeder, let me try and just explain. When a child is abused, they have to shut that part of their mind off. They have to shut that memory away. Yeah, so my question, it realizes that there was abuse? No, no. This is not a repressed memory case. What happens is, then they go on to have horrible lives, typically. A plaintiff's life, in this case, wasn't quite so bad, and that probably contributed to his ongoing denial. But what happens is, drug addiction, sexual addiction, all these different factors, all of a sudden, they go along their life thinking, well, that's just who I am. And then, at some point, usually in their 40s, or when they start to have kids at the same age that they were when they were abused, they realize, wow, okay, this is why. This is why I've had such a horrible life. And before that time, the mind literally boxes away the abuse and says, that didn't do anything to you. And that's what plaintiff testified that he did. And that's what Dr. Green's report says that he did. Even though his brother, and even though he had received the notice, and even though he knew that he had been abused. Not to be flippy, Your Honor, but denial is not just a river in Egypt. I mean, it is an incredibly powerful force that people will reject the truth in order to maintain their psychological integrity. And until those barriers are broken down, sometimes through therapy, sometimes through childbirth, sometimes through any number of things, until that happens, they cannot realize that the abuse caused a separate, segregated injury, such as drug addiction, depression. In the plaintiff's case, it was depression. But he had a bad life. Why wouldn't he be depressed? So that's the basis. And I wanted to point out very briefly then, not only the Avila case, which is 633 F3rd at 842 and 43, where it discusses all the different health problems that the residents of this town had from hexavalent chromium, but also the O'Connor v. Boeing, which is 311 F3rd 1139. It's a 2002 case. There were cancers. Everybody knew that there were radioactive materials and toxic chemicals. The district court had ruled that publicity was enough to trigger the SOL. But this court said that the record does not inexorably lead to a single inference that plaintiffs knew or suspected the cause of their injuries. You have to determine that what you were exposed to caused harm for inquiry notice to even if it did not happen here. So the standard is a reasonable person in the plaintiff's position, which under Oregon law includes the fact that he's a child abuse victim. We would respectfully ask you to reverse the trial court. Okay. Thank you, Mr. Rogendorf. Doe v. Archdiocese of Portland shall be submitted. And the last case on our docket, Swims Under v. Astru, is submitted on the briefs. Accordingly, we thank counsel for their excellent arguments. We thank both counsel for coming from Portland, and we will adjourn.
judges: Beistline, Schroeder, Gould